IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL OTTE,

            Appellant,

    v.

NAVISCENT, LLC,

            Appellee;


LEEANNA MARTINEZ,

            Appellant,

    v.

NAVISCENT, LLC,

            Appellee;

Lead Case No.  19-cv-07898-CRB

Consolidated with Case No. 19-cv-08139-CRB and Case No. 20-cv-03144-CRB

**ORDER RE BANKRUPTCY APPEALS**

Before the Court are two appeals from the bankruptcy court in a case involving an embezzling bookkeeper and two of her victims.[1]

## I.     BACKGROUND

### A.     Embezzlement

Since at least 2006, Appellant and debtor Leeanna Martinez ("Martinez") worked as an independent contractor, performing bookkeeping services for several clients.  Mem. Dispo. After

---

[1] The Court finds this matter suitable for resolution without oral argument, pursuant to Civil Rule 7-1(b).

1    Trial (hereinafter "Trial Order") (dkt. 1-3) at 3.  One of Martinez's clients was Appellee

2    Naviscent, LLC ("Naviscent"), a California consulting company that specializes in marketing

3    research and user interface design.  Martinez also performed bookkeeping services for Appellant

4    Michael Otte ("Otte").  Id.

5         In March 2018, Otte discovered that Martinez had embezzled approximately $38,000 from

6    him.  Id.  After he confronted Martinez and requested more information to determine his losses,

7    Otte contacted Martinez's other clients, including Naviscent CEO George Papazian, to inform

8    them of Martinez's embezzlement.  Id.  Naviscent began its own investigation into Martinez.  Id.

9    In a meeting with Naviscent representatives and her husband, Martinez admitted to embezzling

10   from Naviscent.  Id.  Otte pursued settlement efforts with Martinez.  Id.  After failed efforts to

11   settle, Naviscent pursued a state court action against Martinez.  Otte Brief (dkt. 41) at 8–9.

12        **B.    Naviscent v. Martinez – State Court Action**

13        In April 2018, Naviscent sued Martinez in Santa Clara Superior Court.  Naviscent Brief re

14   Otte (dkt. 49) at 8.  Naviscent also filed an ex parte application for a right to attach order and writ

15   of attachment.  Id.  Naviscent sought a temporary protective order in the alternative.  Id.  The court

16   denied Naviscent's ex parte application and converted it to a noticed motion for right to attach

17   order ("Writ Application").  Id.  On April 24, 2018, the court issued a Temporary Protective Order

18   ("TPO"), which prohibited Martinez from transferring any interest in any of her real or personal

19   property.  Id.  When it issued the TPO, the court did not require Naviscent to post a bond.[2]

20   Naviscent Brief re Martinez (dkt. 47) at 7.  Naviscent served Martinez with the TPO and other

21   relevant documents.  Id.  On May 3, 2018, Naviscent recorded a lis pendens, which notifies the

22   public of the TPO lien.  Id.  At Martinez's request, the court continued the hearing on Naviscent's

23   writ application to June 19, 2018 and extended the TPO.  Id. at 9.  Before the hearing, Naviscent

24   learned that Martinez and Otte entered a settlement agreement and that Martinez executed a

25   promissory note and deed of trust encumbering her home to Otte.  Id.  Naviscent filed an ex parte

26

27
_____

28   [2] Otte contends that while the court did not explicitly require Naviscent to post a bond, the TPO
     states that a bond had been posted.  See Otte Brief at 9.

United States District Court
Northern District of California

1    application for an order to show cause re contempt for Martinez's violation of the TPO.  Id.

2        Martinez requested a further continuance of the hearing on the writ application and did not

3    challenge the validity of the TPO before or during the hearing.  Naviscent Brief re Martinez at 7–

4    8.  On June 28, 2018, the court granted Naviscent's right to attach order ("RTAO") and issued a

5    writ of attachment ("Writ").  Id.  Naviscent did not post an undertaking because the RTAO did not

6    require it to.[3]  Id. at 10.  The Writ was served and recorded on June 29,[4] 2018.  Id.

### C.    Otte & Martinez Settlement

     On April 30, 2018, shortly after Naviscent filed its complaint against Martinez, Otte and

Martinez reached a settlement agreement.  Otte Brief at 10.  The agreement required Martinez to

pay Otte $300,000 in the form of a promissory note and a deed of trust against her home.  Id.  The

deed of trust was recorded with the county on May 16, 2018—only a few weeks after Naviscent

obtained a TPO against Martinez.  Id.

     Otte contends that, at the time he signed the settlement agreement, he reviewed a title

report for the Martinez property that did not indicate any TPOs, writs, or lis pendens in favor of

Naviscent.  Id. at 10–11.  Otte also maintains that he learned of Naviscent's state court action

against Martinez only after he signed the settlement agreement with Martinez.  Id. at 10.

Additionally, Otte states that he did not know of Naviscent's TPO or Writ against Martinez until

May 31, 2018—almost two weeks after Otte recorded the deed of trust against Martinez's

property.  Id. at 11.

### D.    Bankruptcy Court Proceedings

     Martinez filed for Chapter 13 bankruptcy on August 22, 2018.  Naviscent Brief re Otte at

10.  Judge M. Elaine Hammond presided over the bankruptcy proceedings in this case.  Martinez

Brief (dkt. 40) at 1.

---

[3] The judge issued a RTAO on Judicial Council Form AT-120.  See RTAO (dkt. 36-40) at 104–
105.  Paragraph 2.i. of the form reads: "An undertaking in the amount of $_____ is required
before a writ shall issue. . ."  Id.  On the RTAO issued to Naviscent, the checkbox beside
Paragraph 2.i. is blank and no amount is listed.  Id.  As Naviscent explains, the judge "handwrote
changes to the proposed order, and left blank the amount of undertaking required before a writ
could issue."  Naviscent Brief re Martinez at 24.
[4] Otte asserts that this happened on June 24, 2018.  Otte Brief at 11.

United States District Court
Northern District of California

1. **Proofs of Claim**

Naviscent and Otte filed claims against Martinez's estate on October 9, 2018 and September 25, 2018, respectively. Naviscent Brief re Otte at 10. Naviscent retained an accounting firm to compute its claim based on the amount of money that Martinez embezzled from Naviscent. Otte Brief at 14. Naviscent's initial claim was for $279,919.54 plus prejudgment interest and attorneys' fees. Id. On June 21, 2019, Naviscent filed an amended proof of claim which sought to recover a larger amount—$734,000.[5] Id. at 15.

Otte based his claim on the settlement agreement, promissory note, and deed of trust. Id.

2. **Adversary Proceedings**

a. **Naviscent v. Otte**

On November 13, 2018, Naviscent filed an adversary proceeding in bankruptcy court against Otte, and sought a declaration that: (1) Otte's deed of trust was invalid; and (2) Naviscent's TPO had priority over Otte's deed of trust.[6] Otte Brief at 12. Naviscent later amended its complaint to add causes of action for avoidance of Otte's deed of trust and actual and constructive fraud. Id.; Naviscent Brief re Otte at 13.

On March 19, 2019, Otte filed an adversary proceeding against Naviscent, seeking declaratory relief, and alleging that: (1) Naviscent's TPO and Writ were void; (2) Naviscent's claim, if it existed, was subordinate to Otte's deed of trust; and (3) Naviscent had failed to establish the amount of its claim against Martinez. Otte Brief at 12. Otte argued that Naviscent did not qualify for a Writ, the state court extended the TPO without noticed motions, and Naviscent did not post an undertaking. Id. Naviscent asserted a variety of affirmative defenses and argued that Otte's settlement agreement, promissory note, and deed of trust were unenforceable. Id.

The bankruptcy court consolidated the two adversary proceedings for trial and appeal.

---

[5] At trial, Naviscent's witnesses testified about the process by which this figure was computed. Otte Brief at 15–17.
[6] A few months prior, on July 13, 2018, Naviscent also sued Otte in state court and sought the same relief that he sought in the adversary proceeding. Otte Brief at 12.

1    Otte Brief at 12.

2                    **b.      Martinez v. Naviscent**

3           On December 27, 2018, Martinez filed an adversary proceeding against Naviscent, alleging

4    for the first time that Naviscent's TPO and Writ were void because it did not post an undertaking.

5    Naviscent Brief re Otte at 10.  On March 5, 2019, the court denied Martinez's motion for

6    summary judgment on that claim and held that the Writ was <u>voidable</u> but not void.[7]  <u>Id.</u>; Order on

7    MSJ (dkt. 1-3) Ex. B at 36.

8           Martinez then moved to alter or amend the order denying summary judgment.  Mem. Dec.

9    re Mot. to Alter or Amend (dkt. 1-3) Ex. C at 41.  Both parties moved for relief from the stay[8] to

10   allow the state court to make further findings regarding the validity of the TPO and Writ.  <u>Id.</u>  At

11   an initial hearing on Martinez's motion to alter or amend the judgment, the court determined that it

12   could resolve the question of whether Naviscent's Writ remained valid, and directed the parties to

13   file supplemental briefing on that issue as part of the motion to alter or amend the judgment.  <u>Id.</u>

14   Judge Hammond also invited Otte and Rene Martinez, who were parties in interest but not parties

15   to the adversary proceeding, to file briefs on the motion to alter or amend.  <u>See</u> Naviscent Brief re

16   Otte at 12.  Otte did not file a brief.  <u>See</u> Trial Order at 6.  Because the court determined that the

17   issue was properly before the bankruptcy court, it denied the parties' requests for stay relief.  <u>Id.</u>

18          In a memorandum decision denying Martinez's motion to alter or amend the judgment, the

19   court on September 6, 2019 affirmed its prior ruling that Naviscent's TPO and Writ were voidable,

20   not void, and held that the doctrine of laches barred Martinez from voiding the TPO and Writ.  <u>Id.</u>;

21   Mem. Dec. on Mot. to Alter or Amend Ex. C at 41.  This decision was binding on all parties,

22   including Otte.  <u>See</u> Otte Brief at 13.

23

24

25   _____

     [7] "A void judgment is ineffective, unenforceable, and a nullity for all purposes." CALIFORNIA
26   JUDGES BENCHBOOK: CIVIL PROCEEDINGS—AFTER TRIAL § 3.4 (OCT. 2019).  Judges must set
     aside all void judgments.  <u>Id.</u>  Voidable judgments, on the other hand, cannot be set aside by a
27   judge.  <u>Id.</u>  Instead, the party seeking to set aside a voidable judgment must act to set it aside
     before the judgment becomes final.  <u>Id.</u>
28   [8] The initiation of the bankruptcy court proceedings placed an automatic stay on the state court
     action.  <u>See</u> Naviscent Brief re Martinez at 10.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 3.       Naviscent & Otte - Consolidated Trial

The bankruptcy court consolidated the adversary proceedings between Naviscent and Otte for trial.  Otte Brief at 13.

#### a.       Pre-trial Issues

At the pretrial conference, Otte challenged Naviscent's expert report, which contained "heavily-or completely-redacted invoices and communications."  See Naviscent Brief re Otte at 13; Otte Brief at 13–14.  On June 19, 2019, the court issued a discovery order which: (1) required Naviscent to verify that only one ATM card was relevant to its claim against Martinez; and (2) allowed Naviscent to produce redacted documents, without a privilege log, if those documents "pertain[ed] to [Naviscent's] legitimate business operations and that [were] not part of or related to [Naviscent's] claims against Ms. Martinez or Mr. Otte."  Otte Brief at 14.

#### b.       Trial

After the two-day trial, the judge concluded that: (1) Naviscent established an allowed secured claim of $734,000, plus interest and attorneys' fees and costs; (2) Otte established a non-priority unsecured claim in the amount of $300,000; and (3) Martinez demonstrated an intent to hinder or delay Naviscent's recovery when she transferred to Otte the promissory note secured by a deed of trust against her home, thereby rendering Martinez's grant of a security interest to Otte "avoided."  Naviscent Brief re Otte at 15; Trial Order.  The court also found, based on the law of the case doctrine, that her rulings on summary judgment in Martinez v. Naviscent precluded Otte's challenges to Naviscent's Writ.  Otte Brief at 18; Trial Order at 5 ("I am compelled to find the same result as before.").

### E.       The Pending Appeals

Presently before the Court are two appeals.

#### 1.       Martinez Appeal

Martinez appeals the bankruptcy court's Order Denying Motion for Summary Judgment and its subsequent Order Denying Motion to Alter or Amend Judgment, and its Order Granting Summary Judgment.  Martinez Brief at 6.  Martinez asks this Court to reverse these orders and

1    hold that Naviscent's TPO and Writ are void <u>ab initio</u>.  <u>Id.</u> at 30.  Martinez filed her opening brief

2    on September 23, 2020, and Naviscent responded on October 23, 2020.  <u>See generally</u> Martinez

3    Brief; Naviscent Brief re Martinez.  Martinez filed a reply on November 6, 2020.  <u>See generally</u>

4    Martinez Reply (dkt. 51).

5                              **2.    Otte Appeal**

6         Otte appeals the bankruptcy court's Trial Order and asks this Court to: (1) reverse the

7    bankruptcy court's decision; (2) reinstate Otte's allowed secured claim; and (3) limit Naviscent's

8    claim to $265,257.61.  Otte Brief at 34.  Otte filed his opening brief on September 24, 2020, and

9    Naviscent responded on October 26, 2020.  <u>See generally</u> Otte Brief; Naviscent Brief re Otte.  Otte

10   filed a reply on November 9, 2020.  <u>See generally</u> Otte Reply (dkt. 52).

11   **II.    LEGAL STANDARD**

12        The district court, in reviewing a bankruptcy court decision on appeal, applies a "clearly

13   erroneous" standard to the bankruptcy court's findings of fact, and reviews that court's

14   conclusions of law <u>de novo</u>.  <u>Robertson v. Peters (In re Weisman)</u>, 5 F.3d 417, 419 (9th Cir.

15   1993); <u>Briggs v. Kent (In Re Professional Investment Properties of Am.)</u>, 955 F.2d 623, 626 (9th

16   Cir. 1992), <u>cert. denied</u>, 506 U.S. 818 (1992).  Mixed questions of law and fact are reviewed <u>de</u>

17   <u>novo</u>.  <u>Hamada v. Far E. Nat'l Bank (In Re Hamada)</u>, 291 F.3d 645, 649 (9th Cir. 2002).

18   **III.   DISCUSSION**

19

20        The appeals raise three main issues: (A) Whether the bankruptcy court erred in holding that

21   Naviscent's TPO and Writ was voidable and not void; (B) Whether the bankruptcy court erred in

22   holding that Martinez's transfer of a security interest to Otte was voidable; and (C) Whether the

23   bankruptcy court erred in determining the amount of Naviscent's claim.  As explained below, the

24   Court affirms the bankruptcy court's holdings as to Naviscent's TPO and Writ being voidable,

25   Martinez's intent to hinder, Naviscent's claim amount, and the award of attorneys' fees; the Court

26   reverses the bankruptcy court's award of prejudgment interest.

27        **A.    Whether Naviscent's TPO and Writ are void or voidable**

28        Both Otte and Martinez argue that Otte's May 2018 deed of trust on Martinez's property

United States District Court
Northern District of California

7

1  takes priority over Naviscent's April 2018 TPO and June 2018 Writ because the TPO was

2  unperfected and the Writ was deficient and void at the time it was issued. Otte Brief at 27.

3  Naviscent argues that the TPO and Writ are merely voidable and therefore remain valid unless set

4  aside. Naviscent Brief at 14.

5      Section 489.210 of the California Code of Civil Procedure states: "Before issuance of a

6  writ of attachment, [or] a temporary protective order . . ., the plaintiff shall file an undertaking to

7  pay the defendant any amount the defendant may recover for any wrongful attachment by the

8  plaintiff in the action." Cal. Code Civ. P. § 489.210. Naviscent does not dispute the statutory

9  prerequisites for issuance of a TPO or writ of attachment, nor does it dispute that it did not post an

10 undertaking before obtaining the TPO and Writ here. See generally Naviscent Brief re Otte;

11 Naviscent Brief re Martinez. The parties only dispute whether the TPO and Writ, which were

12 issued in the absence of an undertaking, are rendered void because of that error. See Martinez

13 Brief at 14–22; Otte Brief at 26–27; Naviscent Brief re Martinez at 12–13; Naviscent Brief re Otte

14 at 15. To resolve this issue on a motion for summary judgment and later a motion to alter or

15 amend the judgment, the bankruptcy court analyzed two California cases. See generally Mem.

16 Dec. re Motion to Alter or Amend Judgment at 43; People v. Am. Contractors Indem. Co., 33 Cal.

17 4th 653 (2004); Vershbow v. Reiner, 231 Cal. App. 3d 879 (1991).

18     Following American Contractors, the bankruptcy court held that because the state court

19 exceeded its jurisdiction by issuing a TPO and Writ without requiring an undertaking, the TPO

20 and Writ are voidable. Mem. Dec. re Motion to Alter or Amend Judgment at 45–46. The

21 bankruptcy court's conclusion presents a question of law and is reviewed de novo by this Court.

22 See In re Weisman, 5 F.3d at 419. The Court will discuss each of the cases that the parties and

23 bankruptcy court relied on.

### 1.      Applicable case law

24     Otte and Martinez argue that the bankruptcy court erred when it applied American

25

26 Contractors to this case, and that Vershbow, an earlier California appellate court decision, governs

27 because it is directly on point. See Otte Brief at 26–7; Martinez Brief at 15–21. As in this case,

28

8

1    the court in Vershbow had granted the appellant's right to attach on real property owned by her

2    debtor.  Vershbow, 231 Cal. App. 3d at 881.  In its order, issued on Judicial Council form AT-105,

3    the court directed the appellant to file an undertaking and specified the amount.  Id.  Although the

4    appellant failed to comply with this requirement, the clerk nonetheless issued and recorded

5    appellant's writ of attachment.  Id.  The court in Vershbow held that appellant's writ was void ab

6    initio because the clerk acted beyond the court's jurisdiction, the parameters of which were

7    provided by statute.  Id. at 883.

8        The bankruptcy court here declined to apply Vershbow because "American Contractors

9    expands the analysis set forth in Vershbow to require an analysis of whether an invalid act is void

10   or voidable."  Order re Motion to Alter or Amend at 36.  Thirteen years after Vershbow, the

11   California Supreme Court distinguished between trial court actions for which the court lacked

12   fundamental jurisdiction and trial court actions that exceeded the court's jurisdiction.  See

13   American Contractors, 33 Cal. 4th at 660–61.  The court held that where a court lacks jurisdiction

14   to hear or determine a case, due to an absence in authority over the parties or the subject matter, its

15   ensuing judgment is void ab initio.  Id. at 660.  However, if a court acts contrary to the authority

16   conferred upon it by statute, its act or judgment is merely voidable.  Id. at 661.  The bankruptcy

17   court noted that although American Contractors involved statutory bail requirements, California

18   courts have applied its holding in a variety of contexts.  See Mem. Dec. re Motion to Alter or

19   Amend Judgment at 44–45.

20           **2.        Application to our case**

21       Otte and Martinez argue that Vershbow remains good law despite the California Supreme

22   Court's holding in American Contractors.  See Martinez Brief at 18; Otte Brief at 26.  Martinez

23   also contends that American Contractors does not apply to this case because its holding governs

24   only acts taken by the court, not ministerial acts undertaken by court personnel like the clerk.  See

25   Martinez Brief at 18.  The Court concludes that the bankruptcy court did not err when it applied

26   American Contractors.

27       Whether Naviscent's TPO and Writ are void is a question of California law.  See Cal.

28

9

Code Civ. P. § 481.010 et. seq. While federal courts should attribute some weight to lower state court rulings, those decisions are not controlling if the highest state court has spoken on the issue. Comm'r v. Bosch, 387 U.S. 456, 465 (1967). In American Contractors, California's highest court addressed the issue in this case and held that when a state court exceeds its jurisdiction, its acts are voidable, not void. See generally American Contractors, 33 Cal. 4th at 661. As the bankruptcy court noted, courts have extended this holding to a variety of contexts, applying it broadly. See Mem. Dec. re Motion to Alter or Amend Judgment at 44–45. The holding governs here, where the state court had jurisdiction to issue both the TPO and Writ but exceeded its jurisdiction when it did so without requiring Naviscent to post an undertaking. Because the California Supreme Court spoke to this issue in American Contractors, Vershbow, a lower state court, is not controlling. See Comm'r v. Bosch, 387 U.S. at 465.

Not only is Vershbow's holding not binding, but the facts of that case differ from those here in two significant ways.

First, in Vershbow, the state court explicitly required an undertaking in its order granting the right to attach. Vershbow, 231 Cal. App. 3d at 881. Although the plaintiff did not post an undertaking, the clerk issued a writ of attachment. Id. In its reasoning, the Court of Appeal acknowledged that not only did the clerk mistakenly issue a writ, but also that the plaintiff defied a court order that imposed an affirmative obligation to post an undertaking. Id. at 883. Here, the state court issued the RTAO without explicitly requiring an undertaking or specifying an amount in the designated fields on the form. See RTAO (dkt. 36-40) at 104–105. Martinez argues that American Contractors does not apply to this case because its holding governs only acts taken by the court, and not court personnel. Martinez Brief at 18. But, assuming that is true, the error in this case arises from the RTAO itself, which the court, not court personnel, issued.

The second factual difference between Vershbow and this case is that in Vershbow, the state trial court declared void the applicant's Writ in the same action in which the Writ was issued. Vershbow, 231 Cal. App. 3d at 880. A state appellate court later affirmed that decision. Id. Here, neither Otte nor Martinez challenged Naviscent's TPO or Writ in state court, where they were issued, but instead challenged them some time later, in an adversarial proceeding in bankruptcy

10

1    court.  Naviscent Brief re Martinez at 18.

2          In the alternative, Martinez argues that the bankruptcy court erred when it "refused to

3    reconcile <u>American Contractors</u> with <u>Baird</u>," a 1932 California Supreme Court decision that

4    Martinez cited in her motion to alter or amend the judgment, but not in her summary judgment

5    motion.  <u>See</u> Martinez Brief at 21; Mem. Dec. re Motion to Alter or Amend Judgment at 48; <u>see</u>

6    <u>generally</u> <u>Baird v. Smith</u>, 216 Cal. 408 (1932).  The bankruptcy court did not apply <u>Baird</u> because

7    it was not directly on point.  <u>See</u> Mem. Dec. re Motion to Alter or Amend Judgment at 48.  In

8    <u>Baird</u>, the court held that a court clerk's ministerial act in excess of the clerk's jurisdiction was

9    void.  <u>Baird</u>, 216 Cal. at 410.  In that case, the clerk prematurely entered a default judgment

10   against a defendant, the entry of which was later determined to be void.  <u>Id.</u> at 409–10.

11         <u>Baird</u> is distinguishable because the default judgment statutes differ from the attachment

12   statutes.  The clerk in <u>Baird</u> entered default judgment pursuant to Section 585 of the California

13   Code of Civil Procedure, which outlines the circumstances under, and the procedures by which,

14   court clerks enter default judgment.  <u>See</u> <u>Baird</u>, 216 Cal. at 409; Cal. Code. Civ. P. § 585.  Section

15   585 explicitly grants the clerk authority to enter default judgment without a court's order in certain

16   circumstances, none of which were present in <u>Baird</u>.  <u>See</u> <u>Baird</u>, 216 Cal. at 409; Cal. Code Civ. P.

17   § 585.  The statutes governing attachments do not authorize the clerk to issue a writ of attachment

18   without a court order.  <u>See</u> Cal. Code Civ. P. § 485.  As Naviscent notes, the clerk's authority in

19   <u>Baird</u> was derived directly from the statute, whereas here, the clerk's authority to issue the TPO

20   and Writ derived from the court's RTAO.  <u>See</u> Naviscent Brief re Martinez at 23–24.  Due to the

21   factual differences between the cases, the Court agrees with the bankruptcy court that <u>Baird</u> is not

22   on point and therefore did not bind its decision.

23         Because <u>American Contractors</u> is binding precedent that addresses the issue in this case—

24   whether Naviscent's TPO and Writ are void or merely voidable—the bankruptcy court did not err

25   when it applied <u>American Contractors</u>.  Despite the lack of an undertaking, Naviscent's TPO and

26   Writ were merely voidable.  This order now addresses the numerous additional challenges the

27   appeals make to the TPO and Writ.

28

United States District Court
Northern District of California

**3.      Whether the TPO expired before the Writ was issued**

As an alternative basis upon which the Court could declare Naviscent's Writ void, Martinez argues that Naviscent's TPO expired before the Writ was issued.  See Martinez Brief at 23–25.  Martinez contends that the state court's May 22, 2018 order extending Naviscent's TPO until June 22, 2018 is void or voidable because Naviscent did not request an extension pursuant to the process provided in Section 486.100 of the California Code of Civil Procedure.  Id. at 23–24.  For the same reason, Martinez also contends that the state court's May 31, 2020 order further extending the TPO is void or voidable.  Id. at 24.  Section 486.100 provides that the court may "modify or vacate" the TPO "after a noticed hearing."  Cal. Code Civ. P. § 486.100.  Martinez argues that because the state court judge extended the TPO twice without a noticed hearing, the extensions did not comply with Section 486.100.  Martinez Brief at 24.

Naviscent does not dispute Martinez's characterization of Section 486.100, but instead points to the actual statutory authority under which the state court extended Naviscent's TPO.[9] Naviscent Brief re Martinez at 25.  Section 484.040(b) provides that a court may grant the defendant a continuance of a hearing on a writ application to allow more time to oppose the application.  Cal. Code Civ. P. § 484.040(b).  The subsection further states: "If such a continuance is granted, the court shall extend the effective period of any protective order issued. . . for a period ending not more than 10 days after the new hearing date. . ."  Id.  At the May 22, 2018 hearing on Naviscent's Writ application, the court granted Martinez's request for continuance and postponed the hearing to June 19.  Naviscent Brief re Martinez at 25.[10]  In compliance with the mandate set forth in Section 484.040(b), the judge extended Naviscent's TPO to June 22 ("not more than 10 days after the new hearing date").  Id.  The court extended the TPO again, to June 30, after it denied Naviscent's second ex parte Writ application.  Id. at 26.[11]  Section 486.030 of the

---

[9] Martinez does not further address this issue in her reply brief.  See generally Martinez Reply.
[10] See also Naviscent Brief re Martinez at 3 (citing SER 215:1–5) ("Appellant's attorney assured the state court that, with the TPO in place and its duration extended, Naviscent would not be prejudiced by the requested continuance.").
[11] See also Naviscent Brief re Martinez at 4 (citing SER 215:24–25) ("Appellant's attorney again represented that Naviscent would not be prejudiced by the later hearing date, because the TPO remained in place.").

1
2
3

California Code of Civil Procedure provides courts with the authority to issue a TPO instead of granting the ex parte Writ application.  Cal. Code Civ. P. § 486.030.  Both extensions of the TPO were authorized by statute and are therefore neither void nor voidable.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

   Lastly, Martinez argues that under Section 493.030(b) of the California Code of Civil Procedure, Naviscent's judgment lien terminated because the lien was created within ninety days prior to the filing of the Chapter 11 bankruptcy petition.  See Martinez Brief at 25; Cal. Code Civ. P § 493.030(b).  Section 493.030(b) states: "The filing of a petition commencing a voluntary or involuntary case under Title 11 of the United States Code (Bankruptcy) terminates a lien of a temporary protective order or of attachment if the lien was created within 90 days prior to the filing of the petition."  Cal. Code Civ. P § 493.030(b).  This statute does not apply here because the lien of the TPO was not created within 90 days of the date on which Martinez filed her bankruptcy petition.  The creation of an attachment lien relates back to the date on which the creditor obtained a TPO.  See In re Wind Power Syst., Inc., 841 F.2d 288, 290 (9th Cir. 1988).  Here, Naviscent obtained its TPO on April 24, 2018, and therefore the creation of the lien relates back to April 24, 2018—which is not within 90 days prior to Martinez's Chapter 11 filing on August 22, 2018.  See Naviscent Brief re Martinez at 7, 9.  Naviscent's lien did not terminate under Section 493.030(b) and, as previously addressed, its TPO did not expire prior to the issuance of the Writ.

19
20

   **4.**   **Whether the bankruptcy court erred when it did not consider Martinez's "strong-arm" arguments**

21
22
23
24
25
26
27
28

   Martinez argues that Section 544 of the Bankruptcy Code, the "strong-arm" clause, authorizes her to avoid Naviscent's security interests in her property because they are invalid.  See Martinez Brief at 25– 27.  Section 544 of the Bankruptcy Code allows a trustee in a Chapter 13 bankruptcy proceeding to avoid or take priority over security interests that are determined to be avoidable under applicable state law.  See 11 U.S.C. § 544.  In its order denying Martinez's request to alter or amend the judgment, the bankruptcy court summarily rejected this argument because in her complaint, Martinez did not state a claim to set aside Naviscent's lien under Section

United States District Court
Northern District of California

13

544.  <u>See</u> Mem. Dec. re Motion to Alter or Amend Judgment at 49 n.1.  Martinez argues that the bankruptcy court erred in declining to address her Section 544 claim because when the bankruptcy court concluded, as a matter of law, that Naviscent's TPO and Writ were valid and not avoidable, the court's conclusion "necessarily required the Bankruptcy Court to consider section 544(a) of the Bankruptcy Code."  <u>See</u> Martinez Brief at 25–27; Martinez Reply at 12.  Whether the bankruptcy court erred when it declined to consider Martinez's section 544 argument on the merits is a question of law for <u>de novo</u> review.  <u>See In re Weisman</u>, 5 F.3d at 419.

In her complaint, filed in the adversary proceeding action against Naviscent, Martinez did not state a claim under Section 544.  <u>See</u> Naviscent Brief re Martinez at 20.  Martinez also did not raise Section 544 in her motion for summary judgment, her memorandum of points and authorities in support of her motion to alter or amend that judgment, nor in her motion for relief from the automatic stay.  <u>Id.</u>  Martinez only raised her Section 544 argument in her supplemental briefing on her motion to alter or amend the judgment.  <u>See</u> Martinez Reply at 12.  Martinez forfeited this argument for two reasons.  First, because Martinez did not raise the issue in her motion for summary judgment, it was improper for her to raise the issue in her motion to amend or alter the court's order denying summary judgment.  <u>See Kona Enter., Inc. v. Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation").  Second, the bankruptcy court instructed the parties to limit the issues in their supplemental briefs to those raised in Martinez's motion for summary judgment.[12]  Naviscent Brief re Martinez at 20.

Because parties cannot raise new issues or theories on appeal, this Court also declines to consider Martinez's Section 544 argument.  <u>See</u> 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2716 (4TH ED. 2020).

---

[12] Moreover, in a hearing during which the parties discussed the issues to be addressed in supplemental briefing, Martinez's counsel acknowledged that any "further determination that may need to be made under either 544(a)(1) or (a)(3) . . . is not properly in that motion for summary judgment. . . I agree with Mr. Harris that the motion for summary judgment frames the issues for the [motion to alter or amend the judgment.]."  <u>See</u> April 26, 2019 Hearing Transcript (dkt. 40-2) at 395.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**5.      Whether the bankruptcy court erred in granting summary judgment**
**<u>sua sponte</u> for Naviscent**

Martinez argues that the bankruptcy court erred when it granted summary judgment <u>sua</u> <u>sponte</u> in Naviscent's favor because the court failed to provide Martinez with prior notice or an opportunity to challenge Naviscent's affirmative defenses.  Martinez Brief at 28–29.  Martinez contends that she had no opportunity to oppose Naviscent's affirmative defenses because the bankruptcy court only authorized supplemental briefing on the motion to alter or amend the judgment that addressed "the issue of whether Naviscent's attachment lien constituted a 'valid enforceable lien.'"  Martinez Reply at 16.

Rule 56(f) requires a court to give notice and a reasonable time to respond if it grants summary judgment for the nonmovant.  <u>See</u> Fed. Rule Civ. P. 56(f)(1).  Here, the bankruptcy court provided both notice and reasonable time to respond before granting summary judgment in favor of Naviscent, the nonmovant.  At a hearing on April 22, 2019, the court informed the parties that it "did not rule as fully as [it] should have on the motion for summary judgment" because it did not address whether Naviscent had a secured claim.  April 22 Hearing Transcript (dkt. 40-2) at 346–47.  The court notified the parties that it would retain jurisdiction to address that issue by way of a motion to alter or amend the judgment.  <u>Id.</u> at 346, 376.  At the initial hearing on the motion to alter or amend the judgment, the court discussed the issues to be addressed in the supplemental briefs.  <u>See generally</u> April 26 Hearing (dkt. 40-2) at 387–406.  The court agreed with a party's framing of the issue as "whether or not, given that [they're] voidable, the order and writ should be set aside or preserved."  <u>Id.</u> at 396.

These statements indicate that the court did notify Martinez that it intended to resolve the issue of whether Naviscent's TPO and Writ should be set aside, which could potentially result in a grant of summary judgment in favor of Naviscent.  Additionally, Martinez had reasonable time to respond regarding this issue.  At the April 26 hearing, the court stated that it was prepared to rule on the outstanding issue and would allow each side "an opportunity to fully present their arguments on it."  <u>Id.</u>  The record indicates that not only did the court provide Martinez with an opportunity to address the issue in her supplemental briefing, but that Martinez actually did when

1    she discussed Naviscent's affirmative defenses in her supplemental brief.  See Martinez's

2    Supplemental Reply Brief re Motion to Alter or Amend Judgment (dkt. 40-2) at 470.

3         Because the bankruptcy court complied with the requirements of Rule 56(f)(1), the

4    bankruptcy court did not err in granting summary judgment sua sponte in favor of Naviscent.

5         **6.    Whether Martinez v. Naviscent precludes Otte from raising his**

6              **affirmative defenses**

7         The bankruptcy court held that its rulings in Martinez v. Naviscent prevented Otte from

8    later objecting to the validity of Naviscent's Writ.  See Trial Order at 6.  Otte argues that the

9    bankruptcy court erred when it applied the law from Martinez v. Naviscent to Otte's case.  Otte

10   Brief at 28.  Whether or not the bankruptcy court's ruling on Martinez's motion for summary

11   judgment binds Otte is a question of law for this Court to review de novo.  See In re Weisman, 5

12   F.3d at 419.

13        The law of the case doctrine precludes courts from reconsidering a previously decided

14   issue.  See United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997).  The doctrine applies to

15   issues that were "decided explicitly or by necessary implication in the previous disposition."  See

16   United States v. Lummi Nation, 763 F.3d 1190, 1187 (9th Cir. 2014).  The law of the case

17   doctrine extends to bankruptcy cases, which comprise the initial bankruptcy filing and any

18   adversary proceedings that arise from the filing.  See In re GGW Brands, LLC, No. 2:13-bk-

19   15130-SK, 2013 WL 6906375, at *16 (Bankr. C.D. Cal. Nov. 15, 2013) (citing In re Pilgrim's

20   Pride Corp., 442 B.R. 522, 530 (Bankr. N.D. Tex. 2010)).  The doctrine also applies between

21   separate adversary proceedings in the same bankruptcy case.  Id.  The Ninth Circuit has identified

22   certain exceptions to the law of the case doctrine, one of which Otte argues applies here.  See

23   Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).  Courts may reopen a previously resolved

24   question if its first decision was clearly erroneous.  Id.  Because the Court agrees with the

25   bankruptcy's holding that Naviscent's TPO and Writ are valid, Otte's argument is unavailing.

26        In Martinez v. Naviscent, the bankruptcy court explicitly decided the issue of whether

27   Naviscent's TPO and Writ were void or voidable and held that they were voidable.  The

28

United States District Court
Northern District of California

1    bankruptcy court correctly declined to reconsider this issue when Otte raised it in his adversary

2    proceeding against Naviscent.[13]

3            **7.       Otte's additional arguments regarding the validity of Naviscent's TPO**

4                       **and Writ**

5            In his brief, Otte adopts Martinez's arguments in support of her position that Naviscent's

6    Writ is void.  Otte Brief at 27.  Otte also offers four additional arguments.  Id. at 27–29.

7            **a.       Failure to notify Otte of TPO**

8            Otte argues that even if Naviscent's Writ is valid, Naviscent's TPO is unperfected because

9    Naviscent failed to notify Otte that it obtained the TPO against Martinez.  See Otte Brief at 21.

10   Otte cites California Civil Code § 1214 as authority for his contention, but does not explain

11   further.  Otte Reply at 13.  Section 1214 is California's bona fide purchaser statute that renders

12   unrecorded conveyances void when subsequent bona fide purchasers record their title first.  See

13   Cal. Civ. Code § 1214; see also In re Tippett, 542 F.3d 684, 688 (9th Cir. 2008).  Even if Otte

14   demonstrated that the bona fide purchaser statute applies to Naviscent's TPO and Writ, which he

15   did not, his argument is unavailing.  First, upon obtaining its TPO, Naviscent recorded a lis

16   pendens.  Naviscent Brief re Otte at 8; see also Rose v. Knapp, 153 Cal. App. 2d 379, 386 (1957)

17   ("a lis pendens gives notice of what may be established by the judgment, and is effective with

18   respect to what is established.").  Second, upon obtaining its Writ, Naviscent served and recorded

19   the Writ with the county.  Naviscent Brief re Otte at 10.

20           **b.       California Code of Civil Procedure § 484.110(a)**

21           Otte next argues that the bankruptcy court erred when it "ignored" California Code of Civil

22   Procedure Section 484.110(a), which, Otte argues, bars the use of waiver and doctrine of laches as

23   affirmative defenses.  Id.  Whether section 484.110(a) applies to this case and bars Naviscent's

24   affirmative defenses is a question of law reviewed de novo.  See In re Weisman, 5 F.3d at 419.

25

---

26   [13] Additionally, the record suggests that Otte was aware that the court's rulings in Martinez v.
     Naviscent would bind him and he raised no objection.  At the April 22 hearing, Otte's counsel
27   requested that "Mr. [Otte] who will be affected and was affected by the summary judgment just be
     included, noticed, and participate in [the next hearing in Martinez v. Naviscent]."  See April 22
28   Hearing Transcript at 356.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Under Section 484.110(a) of the California Code of Civil Procedure, a defendant's failure

2  to oppose either the issuance of a right to attach order or any of the plaintiff's evidence in support

3  thereof does not constitute "a waiver of any defense to the plaintiff's claim in the action or any

4  other action."  See Cal. Code Civ. P. § 484.110(a).  Otte interprets this section to mean that "a

5  defendant's failure to object to the issuance of or any other defenses to a Writ are preserved

6  through trial."  Otte Brief at 28.  Not so.  Section 484.110(a) preserves a defendant's right to raise

7  defenses against a plaintiff's claim and produce evidence at trial even if the defendant did not

8  oppose the issuance of a right to attach order in that action.  See Cal. Code Civ. P. § 484.110(a).

9  A preceding section, Section 484.100, ensures that a court's determinations under the attachment

10  laws have no effect on the determination of any issues in the action.  See Cal. Code Civ. P. §

11  484.100.  Applying Section 484.110(a) to this case, Martinez's failure to object to the state court's

12  issuance of a right to attach order in favor of Naviscent did not preclude her from raising defenses

13  against Naviscent's claims in that action.  Naviscent's claims in the state court action arose from

14  Martinez's embezzlement, not from the court's issuance of the Writ.  In addition, as Naviscent

15  points out, the bankruptcy court did not base her ruling on waiver; she concluded that Martinez

16  unreasonably delayed raising the lack of an undertaking, which prejudiced Naviscent, implicating

17  the doctrine of laches.  See Naviscent Brief re Otte at 18 (citing ER 544:1–544:14; 548:9–16).

18    Section 484.110(a) did not preclude the bankruptcy court from holding that the doctrine of

19  laches barred Martinez's claims.

20    **c.    11 U.S.C. § 362(a)(4)**

21    Otte also contends, without additional argument, that 11 U.S.C. § 362(a)(4) mandates an

22  automatic stay of "any act to create, perfect, or enforce any lien against property of the estate"

23  upon the filing of a bankruptcy petition.  Otte Brief at 27; Otte Reply at 38; 11 U.S.C. § 362(a)(4).

24  The Court will not rule on this issue as it was not before the trial court.  See 10A CHARLES ALAN

25  WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2716 (4TH ED. 2020).

26  Second, Otte fails to explain why an automatic stay imposed by 11 U.S.C. § 362(a)(4) renders

27  Naviscent's TPO and Writ invalid.  See generally Otte Brief; Otte Reply.

28    //

18

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### d.    Rooker-Feldman Doctrine

And Otte contends, without additional argument, that the Rooker-Feldman doctrine prevented the bankruptcy court from "correct[ing] Naviscent's claim post-petition."  Otte Reply at 15; see also Otte Brief at 27.  The bankruptcy court dismissed this argument at trial and held that the Rooker-Feldman doctrine does not apply.  See Trial Order at 6.  Whether the Rooker-Feldman doctrine precluded the bankruptcy court from considering the validity of Naviscent's TPO and Writ is a question of law reviewed de novo.  See In re Weisman, 5 F.3d at 419.

The Rooker-Feldman doctrine prohibits federal courts from exercising appellate review over final state court judgments.  See Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 858–59 (9th Cir. 2008).  The doctrine applies where the losing party to a state court action seeks relief in federal court from an injury caused by a state court judgment.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  As Naviscent points out, Naviscent did not complain of an injury resulting from the state court's judgment, nor did it seek the bankruptcy court's review of the state court's judgment.  See Naviscent Brief re Otte at 22–23.  Nor did any other party to this case.

The Rooker-Feldman doctrine does not apply to this case and therefore did not preclude the bankruptcy court from deciding the validity of Naviscent's TPO and Writ.

### 8.    Conclusion

The bankruptcy court correctly resolved the issue of whether Naviscent's TPO and Writ were void or voidable.  Because the TPO and Writ are merely voidable, Martinez was required to successfully challenge them in order to set them aside.  See Mem. Dec. re Motion to Alter or Amend Judgment at 41.

### B.    Whether Martinez Had an Intent to Hinder or Delay Creditors

Otte argues that the bankruptcy court clearly erred in finding that Martinez intended to hinder or delay Naviscent's recovery when she granted a security interest to Otte in the form of a promissory note and deed of trust.  See Otte Brief at 20.  This finding allowed the court to hold that Martinez's transfer to Otte was voided.  Id.  Section 544 of the Bankruptcy Code authorizes trustees to avoid any transfer of the debtor's property that violates applicable non-bankruptcy law,

19

including the California Uniform Fraudulent Transfers Act ("CUFTA").  See In re Beverly, 374

B.R. 221, 232 (9th Cir. BAP 2007); Cal. Civ. Code § 3439.04.  To qualify as an avoidable transfer

under the CUFTA, the creditor must establish by a preponderance of evidence that the transferor

possessed either an intent to hinder, intent to delay, or intent to defraud a creditor.  In re Beverly,

374 B.R. 221, 235.  The bankruptcy court found that Martinez possessed an intent to delay, and

intent to hinder, but not an intent to defraud.  See Trial Order at 9–11.  Whether the bankruptcy

court erred in finding an intent to hinder or delay is a question of fact to which the Court will

apply a clearly erroneous standard.  See In re Weisman, 5 F.3d at 419.

     To determine whether actual intent exists, courts must consider whether certain

circumstances give rise to the inference of an intent to defraud, delay, or hinder.  See In re

Beverly, 374 B.R. at 235.  CUFTA lists nonexclusive factors known as "badges of fraud" that aid

in this analysis.  See id.; see also Cal. Civ. Code § 3439.04(b).  Here, the bankruptcy court

identified "at least three badges of fraud" to support its finding of an intent to hinder or delay: (1)

the grant of security interest to Otte after Naviscent filed its complaint in state court; (2) a "special

relationship" between Martinez and Otte; and (3) Martinez's "growing and unmanageable

insolvency."  See Otte Reply at 14.

     The bankruptcy court identified text messages and emails in which Martinez expressed

frustration with Naviscent's state court action against her.  See generally Trial Order at 10–12.

Martinez expressed feelings of anger and depression when Papazian refused to agree to her

settlement offer and Naviscent filed a lawsuit instead.  Id. at 10.  After Naviscent filed its lawsuit,

Martinez informed Papazian via email that she had entered into an agreement with Otte and that

she would pay Otte first.  Id. at 11.  Her statement was not true because Martinez and Otte did not

sign the settlement agreement until three days after Martinez sent that email to Papazian.  Id.

Based on these facts, the bankruptcy court identified one of the indicia of intent to hinder or delay:

"before the transfer was made or obligation was incurred, the debtor had been sued or threatened

with suit."  See Trial Order at 12; Cal. Civ. Code § 3439.04(b)(4).

     Martinez's communications with Otte suggest her preference that Otte receive any

available money before Naviscent.  See Trial Order at 10–12.  Upon learning of Naviscent's state

court action against her, Martinez informed Otte via text message that she would tell Papazian that she had signed an agreement with Otte.  Id. at 11.  In another communication with Otte, Martinez said of Papazian:

> Now he's really going to have to work to get his money. I'm signing legal separation papers today so Rene [Martinez's husband] is protected. My estate will have to go through probate. It will be months or more before the house can even be sold. It may go into foreclosure first. He is the one who will be royally screwed.

Trial Order at 11.

The bankruptcy court also identified several facts from which it inferred that Martinez and Otte shared a special relationship.  See Trial Order at 10–12.  Martinez considered Otte to be a "good" person who deserved to receive the available money first.  Id. at 10.  Throughout the state court action between Naviscent and Martinez, Martinez and Otte maintained constant communication via text message and phone calls.  Id. at 10–12.  Martinez updated Otte regarding her communications with Papazian and shared her personal feelings regarding the case and the surrounding events.  Id.  Martinez was transparent with Otte by informing him of her financial hardships.  Id. at 11.  Otte demonstrated sympathy and encouraged Martinez to "stand up to Papazian."  Id.

Additionally, the bankruptcy court found that another indicium of intent was present: "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."  See Trial Order at 12; Cal. Civ. Code § 3439.04(b)(9).  After Naviscent filed its lawsuit, Martinez expressed that she would be unable to sell the home and that there "isn't enough money to pay every one."  See Trial Order at 11.  Martinez also informed Otte of her plan to legally separate from her husband in order to "protect" him, which suggests the severity of Martinez's financial situation as a result of the lawsuit and settlement with Otte.  Id.

The facts identified by the bankruptcy court, considered together, suggest an intent to at least delay Naviscent's claim and likely an intent to hinder Naviscent's claim as well.  Otte argues that the bankruptcy court clearly erred in finding an intent to hinder or delay because: (1) Otte's settlement agreement with Martinez did not actually hinder or delay Naviscent's secured claim; (2) the settlement amount was reasonable; and (3) he did not have an "insider" relationship with

Martinez.  See Otte Brief at 22–26.  None of these arguments is persuasive.

First, Otte challenges the bankruptcy court's finding that Martinez's settlement with Otte demonstrated an intent to hinder or delay Naviscent.  Otte Brief at 23.  Otte argues that this finding was clearly erroneous because there was no evidence that Martinez's settlement with Otte hindered or delayed Naviscent.  Id.  This argument misconstrues the plain language of the statute which, in pertinent part, reads "with actual intent to hinder, delay, or defraud."  See Cal. Civ. Code § 3439.04(a)(1) (emphasis added).  It does not matter whether Otte actually hindered or delayed Naviscent's claim.  See In re Medina, 619 B.R. 236, 241 (9th Cir. BAP 2020) (holding that "actual damages" or "actual harm" is not an element of a fraudulent transfer claim under California Civil Code Section 3439.04(a)(1)).

Second, Otte argues that the bankruptcy court found that its settlement with Martinez was not fraudulent and involved a fair and reasonable amount.  Otte Brief at 22.  Otte fails to explain why a reasonable settlement amount renders the bankruptcy court's finding of an intent to hinder or delay clearly erroneous.  In finding that Martinez entered the settlement agreement with Otte with an intent to delay or hinder Naviscent, the bankruptcy court did not consider the amount of the settlement.  See Trial Order at 10–12.

Third, Otte argues that the bankruptcy court's finding that a special relationship existed between Otte and Martinez was clearly erroneous.  Otte Brief 23–26.  Using the precise language set forth in the CUFTA, Otte argues that no "insider relationship" existed between Otte and Martinez.  Id.  Otte cites to authorities that characterize the "insider relationship" as one in which the creditor exercises significant control or influence over the debtor such that any transaction between them is not "arms-length."  Id. at 25–26.  Otte argues that, while his relationship with Martinez was amicable, he did not exert sufficient control or influence over Martinez to render himself an "insider."  Id.  But whether Otte and Martinez had an "insider relationship" does not change the outcome.  The CUFTA list of badges of fraud are nonexclusive and do not provide a "counting rule [or] a mathematical formula."  In re Beverly, 374 B.R. at 236.  The bankruptcy court considered the relationship between Otte and Martinez among several other factors and drew reasonable inferences based upon the nature and frequency of their interactions.

22

The bankruptcy court did not clearly err when it found that Martinez transferred a security interest to Otte, through the promissory note and the deed of trust, with actual intent to hinder or delay Naviscent. Because the Court upholds this finding, the Court affirms the bankruptcy court's trial order to the extent that it holds that Otte's secured lien is avoided but his claim is allowed as a general unsecured claim.

### C.    Naviscent's Proof of Claim

Otte asks this Court to reverse three of the bankruptcy court's holdings regarding Naviscent's claim. First, Otte argues that Naviscent's claim is not worth $734,000. Otte Brief at 25. Second, Otte argues that Naviscent's claim is not subject to prejudgment interest. Id. at 27. Third, Otte argues that Naviscent is not entitled to attorneys' fees. Id. at 28.

### 1.    Whether the bankruptcy court erred in finding that Naviscent's claim was $734,000

Otte argues that Naviscent's losses were substantially less than the $734,000 the bankruptcy court found. Id. at 25. Otte's chief complaint is that the bankruptcy court accepted the testimony of Naviscent's expert witness, forensic accountant Richard Medina.[14] Otte maintains that "Mr. Medina's findings lacked an adequate foundation" and that it was clear error for the bankruptcy court to rely on his report. Id. The weight to be given to opinion evidence is a question of fact, Aycrigg v. United States, 136 F. Supp. 244, 249 (N.D. Cal. 1954), and questions of fact are governed by the "clearly erroneous" standard, In re Weisman, 5 F.3d at 419. If two views of the evidence are possible, a trial judge's choice between them cannot be clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 573–75 (1985).

Medina's report offered extensive explanation for how he concluded that Martinez embezzled $842,359 from Naviscent between March 2006 and March 2008, listing the documents he reviewed, which included audit reports, bank statements, canceled checks, sales invoices, 1099 statements, and reports from Naviscent's general ledger system. Dkt. 174 Trial Ex. N-18 under

---

[14] In fact, as Otte points out, the bankruptcy court landed at a number $108,000 less than Medina's tally; $734,000 was the amount in Naviscent's amended proof of claim. See Otte Brief at 25 (citing ER Doc. 93 at 16).

1    seal at 3–6.  His report explains how Martinez embezzled money, how the loss was identified, and

2    how he computed the loss.  Id. at 1–2.  Medina spent 116 hours conducting his analysis.  Id. at 7.

3    The bankruptcy court noted that Medina "provided testimony on how the funds were removed and

4    the losses hidden" as to the three types of embezzlement here: "(1) Purchase of personal items

5    using an ATM card for Naviscent's business account, (2) Cash withdrawals made from the

6    business bank account, and (3) Submission of excess hours for work performed as a bookkeeper."

7    Trial Order at 15.

8          Although he did not object to, or move to strike, Medina's Report at trial, see Naviscent

9    Brief re Otte (citing SER 487:5–560:11),[15] and he did not offer his own expert witness at trial,

10   Otte now identifies several problems with the bankruptcy court's acceptance of Medina's

11   testimony.

12                        a.      **ATM Withdrawals**

13         Otte argues first that "Mr. Medina included without question $381,250 in ATM

14   withdrawals because Mr. Papazian told him to."  Otte Brief at 25–26; see also id. at 12 ("Medina

15   did not review any ATM withdrawals or purchases, relying on Papazian's instructions that all such

16   items were caused by Martinez.").  But there was good reason to accept Papazian's assertions

17   about the ATM withdrawals.  The bankruptcy court noted that Martinez had admitted to Papazian

18   that she used "an ATM card associated with Naviscent's business accounts for unauthorized cash

19   withdrawals and debit purchases for her benefit."  Trial Order at 16.[16]  Papazian testified that

20

21   _____

22   [15] Otte did object to the report's attachments pre-trial, and on the first day of trial, based on
     authenticity.  Naviscent Brief re Otte at 9.  Otte reiterates that objection here, see Otte Brief at 26–

23   27 ("The bankruptcy court should not have admitted those invoices"), while Naviscent responds
     that the bankruptcy court only admitted the attached schedules, not the invoices themselves, which

24   does not affect the admissibility of the report itself, Naviscent Brief re Otte at 23 n.3 (citing SER
     561:7–15, SER 678:6–19; SER 828–40).  Even accepting Otte's view of what was admitted, but

25   see Otte Reply at 13 (seeming to concede that the invoices were not admitted), Otte has not
     convincingly argued why this should alter the Court's view of Medina's testimony as a whole.

26   See Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of
     facts or data in forming an opinion on the subject, they need not be admissible for the opinion to

27   be admitted.").
     [16] See also SER (dkt. 49-2) at 932 ¶ 4 (Temple Decl. stating that she attended an interview with

28   Martinez where Martinez admitted "using Naviscent's Wells Fargo ATM card for personal
     purchases and expenditures. . . .").

United States District Court
Northern District of California

ATM cards had only been issued to him, a former business partner, and Martinez, that he had never used or activated his card, and that the former business partner may have used the card a couple of times between 2006 and 2010.  Id.  The "initial analysis" done by Naviscent's accountant, Christina Temple, was that there were $275,257.61 in unauthorized cash withdrawals, as well as an additional $44,638.34 that were suspect.  Id.  Medina identified $381,250 in unauthorized bank withdrawals in cash or via purchases.  Id.  Moreover, the bankruptcy court rejected Otte's suggestion that someone else could have made the ATM withdrawals and purchases, noting that "the only evidence provided at trial was that" Papazian never used his card, the business partner left in 2010 and "would not be responsible for any [use] after that time," and the only remaining person with an ATM card was Martinez, "who admitted to using an ATM card for personal purchases."  Trial Order at 16–17.  The bankruptcy court's conclusion as to the ATM withdrawals was not error.

### b.     Altered/Deleted Quickbooks Deposits

Otte argues next that "Mr. Medina added without review another $453,374 in deposits allegedly deleted by Martinez from the Quickbooks accounting program because Mr. Papazian told him to. . . . Mr. Medina admitted he did not review Naviscent's bank statements or any checks to verify this $453,374 amount," test the validity of any Quickbooks entries, or contact any customers or vendors.  Otte Brief at 26.  Medina testified that Martinez altered or deleted invoices, which resulted in cash in the bank that was not on hand, and allowed her to divert money from the bank account without it being missed.  Naviscent Brief re Otte at 20 (citing Dkt. 174 Trial Ex. N-18 under seal at 5); see also SER 534:2–13, 535:19–536:5, 536:12–537:23 (Medina testimony re how deleting deposits facilitated embezzlement).  He reached this conclusion by comparing actual invoices that Papazian identified as suspicious to the Quickbooks records Martinez kept, and cross-referencing the sales invoices to the sales register.  Naviscent Brief re Otte at 20 (citing Dkt. 174 Trial Ex. N-18 under seal at 2, 5), SER 536:15–18 ("and how do we know she deleted the transaction, because the report says—the report that would be generated from the system says that she was the one that created this transaction").  Papazian testified that there was no reason for

Martinez to alter or delete invoices in the usual course of business, Naviscent Brief re Otte at 20 (citing SER 374:11–375:7, 466:11–16), and Medina testified that there was no reason to delete or alter invoices from the accounting system other than to embezzle, id. (citing Dkt. 174 Trial Ex. N-18 under seal at 2); see also SER 552:18–21.  The bankruptcy court accepted this explanation, finding that Martinez's alterations to the QuickBooks accounting records "created a pool of funds that could be taken without being reflected in the on-going business reports."  Trial Order at 15. Although Otte asserts now that Medina should have reconciled his analysis with Naviscent's bank statements, see Otte Reply at 13, he made the same point at trial, see SER 559:25–560:10, and the bankruptcy court rejected it.  In light of Medina's report and the testimony at trial, the bankruptcy court did not err by including the losses attributable to the Quickbooks deletions and alterations in the loss amount.

### c.      Comparison to Temple Analysis

Finally, Otte argues that the bankruptcy court should have accepted the testimony of Naviscent's accountant, Kristina Temple, over Medina's report, because "[u]nlike Mr. Medina's unsubstantiated result-driven report, Kristina Temple's unbiased and proper analysis of Naviscent's losses were based on entries from Naviscent's bank records and checks which were reconciled with the Quickbooks entries."  Otte Brief at 27.  Otte argues that the bankruptcy court should have capped Naviscent's losses at the $275,257.61 that Temple identified in unauthorized cash withdrawals.  Id.  But Temple did not do a complete analysis of Naviscent's loss.

In April 2018, Temple did a "preliminary" analysis of the cash withdrawals and checks. See SER 932:27–933:7; see also SER 761:21 ("Those were my preliminary results").  Medina authored his report in July 2019.  The available information on Naviscent's losses grew between April 2018 and July 2019.  Addressing Otte's concerns about the increase in Naviscent's claimed losses over time, the bankruptcy court noted Papazian's testimony about "his continued inquiry and demands to Naviscent's financial institutions to produce additional records," which she found credible and consistent with Otte's own testimony about the difficulty of obtaining bank records. Trial Order at 14; see also SER 371:2–372:3 (Papazian testimony about finding more records in

United States District Court
Northern District of California

26

United States District Court
Northern District of California

1  the course of discovery).  Temple testified that her analysis was done based on the information

2  available to her at the time and that there was more information she could not access.  Id. at

3  764:23–765:5.

4        In addition, Temple did not do any analysis of deleted or altered invoices.  Id. at 932:8–

5  933:17.  The scope of her review was narrower—she confirmed that her analysis of unauthorized

6  withdrawals was similar to Medina's unauthorized withdrawals analysis, not that it was similar to

7  his analysis as a whole.  See at SER 761:6–12.  Because the bankruptcy court did not err in

8  accepting Medina's analysis of the Quickbooks deletions and alterations, it did not err by

9  recognizing that Naviscent's losses extended beyond the losses attributable to just unauthorized

10  withdrawals, and thereby accepting Medina's analysis over (or, more accurately, in combination

11  with) Temple's.

12        Accordingly, the bankruptcy court did not err in finding that Naviscent's claim was

13  $734,000.

14              **2.**        **Whether Naviscent's claim is subject to prejudgment interest**

15        Otte further argues that the bankruptcy court erred in awarding Naviscent prejudgment

16  interest.  Otte Brief at 27.  The bankruptcy court's decision to award interest is subject to de novo

17  review.  See In re Weisman, 5 F.3d at 419 (de novo review is appropriate for legal conclusions).

18  Moreover, prejudgment interest is a substantive matter governed by California law.  In re Exxon

19  Valdez, 484 F.3d 1098, 1101 (9thCir. 2007).  The bankruptcy court held that Naviscent was

20  entitled to interest under California Civil Code § 3287(a), which recognizes a right to interest

21  based on an implied contract, and under California Civil Code § 3336, which provides for

22  calculation of damages based on conversion.  Trial Order at 17.[17]  The bankruptcy court noted that

23  accrual of interest post-petition was limited by Bankruptcy Code § 506(b), and so it capped

24  Naviscent's accrual of interest as of the Petition Date.  Id.  While the bankruptcy court determined

25  that Naviscent was entitled to interest in its Trial Order, id., it issued a separate order on March 2,

26

27     [17] The bankruptcy court also held that application of pre-judgment interest is consistent with the

28  attachment statutes.  Id. (citing In re Ryan, 369 B.R. 536, 548–49 (N.D. Cal. 2007)).  In re Ryan did not involve section 3287.  See In re Ryan, 369 B.R. at 548–49.

2020 that made further rulings on interest, see Order re: Motion to Set Fees, Costs and Interest (SER 1052–61).  Otte makes one persuasive argument challenging the award of interest.[18]

Otte argues that "both statutes require the claim amount be definite and certain as a condition to an interest award," that Naviscent's claim amount repeatedly increased, and that the bankruptcy court did not even "calculate Naviscent's claim from the evidence provided," but rather settled on Naviscent's amended proof of claim amount.  Otte Brief at 27–28.[19]  California Civil Code § 3287 provides that "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ."  See Cal. Civ. C. § 3287 (emphasis added).  Naviscent, in its response, emphasizes the phrase "capable of being made certain by calculation."  See Naviscent Brief re Otte at 24 (citing Cal. Civ. C. § 3287).  It then discusses Medina's analysis and the bankruptcy court's own calculations of interest,[20] and suggests that Naviscent's losses must therefore be "capable of being made certain by calculation."  Id. at 24–25.  If Otte was simply reiterating his position that the bankruptcy court should not have accepted Medina's analysis for the purpose of determining the amount of Naviscent's losses,[21] the Court would agree with Naviscent; as discussed above, Medina's analysis was acceptable.

---

[18] The Court rejects out of hand Otte's argument that the bankruptcy court did not find that Martinez caused Naviscent's losses based on an implied contract, see Otte Brief at 28—as that ruling was implicit—and his argument that the bankruptcy court lacked jurisdiction to decide that Naviscent's claim was subject to interest, see id.—as there was no timely appeal at the time of the ruling.

[19] Naviscent argues that this is a new argument on appeal, and so the Court should not address it. See Naviscent Brief re Otte at 23.  Otte's argument in his trial brief that Naviscent had "not established that interest is available for this type of claim," see SER 952, is certainly broader.  But the Court concludes that Otte's earlier argument (interest is not available for this type of claim) captures his current one (interest is not available for this type of claim because this type of claim does not result in certain damages).

[20] In its order awarding interest, the bankruptcy court identified two categories—transactions that could be specifically identified by date, and those for which no date could be identified.  See Order re: Motion to Set Fees, Costs and Interest at 9.  For the first category, it calculated interest from the date of each transaction; for the second category, it calculated interest from the date Martinez stopped providing services to Naviscent (March 28, 2018).  Id.  The bankruptcy court further adjusted its calculation based on inconsistencies it identified.  Id. at 10.  This seems a reasonable methodology.

[21] Again, the bankruptcy court mostly accepted Medina's analysis as to Naviscent's losses, though it reduced Medina's number to $734,000 because that was the amount listed in Naviscent's amended proof of claim.  Trial Order at 14, 16.

28

What the Court believes Otte is saying, instead, is that this kind of process is not what section 3287 means by "capable of being made certain by calculation."  The Ninth Circuit has explained:

> Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage.

Diaz v. Kubler Corp., 785 F.3d 1326, 1329 (9th Cir. 2015) (citing Leff v. Gunter, 33 Cal.3d 508 (1983)); see also Cheema v. L.S. Trucking, Inc., 39 Cal. App. 5th 1142, 1151 (2019), as modified on reh'g (Oct. 7, 2019) ("The trial court erroneously confused uncertainty over the amount of damages with uncertainty as to whether there is liability for damages in an amount that is certain. The former precludes the mandatory award of prejudgment interest . . . but the latter does not.").  Here, there was no real dispute about liability—Martinez admitted that she embezzled from Naviscent.  The main dispute was about the computation of damages.

The Ninth Circuit has held that prejudgment interest must be "calculable . . . mechanically, on the basis of uncontested and conceded evidence," and be available "as a matter of right," rather than at the discretion of a court.  Diaz, 785 F.3d at 1329 (citing Leff, 189 Cal. Rptr. 377).  Here, the damages were not calculable mechanically.  On the contrary, arriving at the amount of losses took 116 hours of analysis by a forensic accountant, see Dkt. 174 Trial Ex. N-18 under seal at 7, a two-day trial, and a significant amount of explanation by the bankruptcy court, see generally Trial Order.  True, the Ninth Circuit has also said, in an unpublished memorandum, that "[t]he presence of a dispute between the parties as to the way in which to calculate damages does not bar recovery under California Code § 3287."  Baker v. Garden Grove Medical Investors, Ltd., 306 Fed. Appx. 393, 396 (9th Cir. 2009) (citing Rabinowitch v. Cal. W. Gas Co., 257 Cal. App. 2d 150 (1967) ("The existence of a bona fide dispute between the parties as to the amount owing under an express contract does not render that sum 'unliquidated.'")).  But Baker involved computing the amount owed under a lease.  The calculation here was much more complicated than in Baker, and the underlying facts were very much contested.  This distinction is significant.  See Warren v. Kia

29

1    Motors Am., Inc., 30 Cal. App. 5th 24, 44 (2018) (emphasis added) (internal quotation omitted)

2    ("[d]amages are deemed certain or capable of being made certain . . . where there is essentially no

3    dispute between the parties concerning the basis of the computation of damages if any are

4    recoverable . . .") (internal quotation marks omitted).

5        The California Court of Appeal has thus explained that the test for recovery under section

6    3287 "is whether <u>defendant</u> actually know[s] the amount owed or from reasonably available

7    information could the defendant have computed that amount." <u>Duale v. Mercedes-Benz USA,</u>

8    <u>LLC</u>, 148 Cal. App. 4th 718, 729 (2007) (internal quotation marks omitted).  It continued: "<u>where</u>

9    <u>the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is</u>

10   <u>not appropriate.</u>" <u>Id.</u> (emphasis in original) (internal quotation marks omitted).  Here, while

11   Martinez knew that she embezzled money from Naviscent over the years, there is no reason to

12   believe that she kept records of the amounts, or even that such amounts were clear from

13   Naviscent's various records.  <u>See</u> <u>Levy-Zentner Co. v. S. Pac. Transp. Co.</u>, 74 Cal. App. 3d 762,

14   799 (1977) ("We reasoned that where a defendant does not know what amount he owes and cannot

15   ascertain it except by accord or judicial process, he cannot be in default for not paying it.").

16   Again, it took Medina 116 hours to do such analysis with a background in forensic accounting.

17       "Courts generally apply a liberal construction in determining whether a claim is certain"

18   under section 3287.  <u>State of California v. Cont'l Ins. Co.</u>, 15 Cal. App. 5th 1017, 1038 (2017)

19   (citing <u>Howard v. Am. Nat. Fire Ins. Co.</u>, 187 Cal. App. 4th 498, 535 (2010)).  Even so, that

20   certainty "is absent when the amounts due turn on disputed facts . . ." <u>Id.</u> (citing <u>Olson v. Cory</u>, 35

21   Cal.3d 390, 402 (1983)).  The amount that Martinez owed to Naviscent turned on disputed facts.

22   It was therefore not "capable of being made certain by calculation" as that phrase has been

23   interpreted in the case law.

24       It was error to award Naviscent prejudgment interest.

25            **3.      Whether Naviscent was entitled to attorneys' fees**

26       Finally, Otte argues that the bankruptcy court should not have awarded Naviscent

27   attorneys' fees.  <u>See</u> Otte Brief at 28–29.  The bankruptcy court stated in its Trial Order that while

28

United States District Court
Northern District of California

30

California Civil Procedure Code § 482.110 authorizes a party seeking attachment to include an estimate of costs and allowable attorneys' fees, Naviscent was obligated to establish a statutory basis for fees.  Trial Order at 17–18.  The bankruptcy court rejected California Civil Code § 3336 as a basis for fees, but concluded that California Penal Code § 496(c) did provide such a basis.  Id. at 18–19.  The bankruptcy court's decision to award attorneys' fees is a legal issue subject to de novo review.  See In re Weisman, 5 F.3d at 419.

Otte objects to Penal Code § 496 serving as a basis for attorneys' fees here for four reasons.  See Otte Brief at 28–29.  Three are easily rejected,[22] and the Court rejects the fourth as well, though it presents a closer question.

### a.   Notice of Section 496

Otte argues that Naviscent did not "assert [section 496] in any pleadings filed in the trial-consolidated cases."  Otte Brief at 28.  Not so.  Naviscent filed its proof of claim on October 9, 2018, and its amended claim on June 21, 2019; both specified attorneys' fees as an item of Naviscent's damages and included Naviscent's state court complaint, which alleged violation of Penal Code § 496 and sought attorneys' fees on that basis.  See First POC (SER 95–104); see also id. at 96 (listing "PC 496" as basis for claim); Amended POC (SER 1113–32); see also id. at 1115 (listing "PC 496" as basis for claim).  Otte's complaint in his adversary proceeding against Naviscent also noted that Naviscent's state court complaint against Martinez alleged violations of the California Penal Code.  See SER 1135:13–17.  Otte therefore had notice that attorneys' fees under section 496 were on the table.

### b.   Jurisdiction

Otte next contends that the bankruptcy court "acknowledged that it lacked jurisdiction over claims under the . . . Penal Code."  Otte Brief at 29.  The bankruptcy court did not say that.  It observed that "[c]ourts reviewing bankruptcy cases and proceedings are granted jurisdiction over all civil proceedings arising under title II of the United States Code, or arising in or related to cases under title 11."  Order re: Motion to Set Fees, Costs and Interest at 3 (citing 28 U.S.C. §

---

[22] Indeed, Otte seems to have dropped them in his reply brief.  See Otte Reply at 15.

1334(b)). It explained that the "adversary proceedings include claims related to cases under title 11," and that Penal Code § 496, which makes it a crime to receive stolen property, also provides in § 496(c) "an enhanced civil remedy for violation of § 496(a)." Id. at 4 (noting that criminal conviction is not a prerequisite to civil liability). The bankruptcy court thus concluded that Naviscent's attorneys' fees request related only to application of a civil remedy, and found Otte's jurisdictional objection "without merit." Id.

### c.  Demand

Otte also asserts that section 496 requires a "demand for payment" but that Naviscent never made such a demand. Otte Brief at 29. Penal Code § 496 requires "demonstrating '(1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof,[23] and (3) that the accused knew that the property was stolen.'" Finton Constr., Inc. v. Bidna & Keys, APLC, 238 Cal. App. 4th 200, 213 (2015). The bankruptcy court held that there is a fourth requirement for § 496(c) to apply: that "the victim must request recovery of the funds before making their claim." Trial Order at 19 (citing Bell, 212 Cal. App. 4th at 1047). Naviscent does not question this conclusion. See Naviscent Brief re Otte at 27 (citing Bell for demand requirement). This Court does not read Bell as requiring a demand. See also Allure Labs, Inc. v. Markushevska, 606 B.R. 51, 65–67 (N.D. Cal. 2019) (concluding that Bell did not require "additional conduct" of demand); id. at 67 (citing Switzer v. Wood, 35 Cal. App. 5th 116, 126 (2019) ("All that is required for civil liability to attach section 496(c) . . . is that a 'violation' of subdivision (a) or (b) of section 496 is found to have occurred.")).

Even assuming that Naviscent was required to demand its property back from Martinez, it did so. Otte concedes that "Naviscent's admitted purpose of meeting with Martinez on April 10, 2018 was to discuss settlement." Otte Brief at 29. This is another way of saying that Naviscent asked Martinez for its money back. Papazian testified that the meeting was intended to confront

---

[23] In addition: the stolen property need not have been stolen by someone else. See Cal. Penal Code § 496(a) ("A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property."); see also Bell v. Feibush, 212 Cal. App. 4th 1041, 1049 (2013).

Martinez, get her to cooperate in determining the amount she embezzled, and get her to agree to pay restitution.  See SER 348:5–354:14 (including testimony that "Ms. Martinez said that she wanted to, you know, do right, that she was going to sell her home and pay me back").  Naviscent and Martinez also had an exchange of emails regarding settlement.  See, e.g., SER 357 (email from Martinez counsel stating in part, "the agreement should include that consideration for the deed of trust and promissory note is in exchange for a full and final settlement").  The bankruptcy court did not err in concluding that Naviscent demanded its money back.

### d.    Stolen Property

Otte's final argument about attorneys' fees is that section 496 requires the "theft or receipt of stolen property," which this case did not involve.  Otte Brief at 29.  Otte argues that embezzlement involves the theft of money, not property.  Id.  Bell held that "anything that could be the subject of a theft can also be property under section 496," 212 Cal. App 4th at 1049 (quoting People v. Gopal, 171 Cal. App. 3d 534, 541 (1985)), and, as the bankruptcy court noted, the California Supreme Court has explained that theft has the same meaning in section 496 as it does in the general theft statute, see Trial Order at 18 (citing People v. Allen, 21 Cal. 4th 846, 863 (1999)).  The general theft statute is quite broad.  See Cal. Penal Code § 484[24]; see also Allen, 21 Cal. 4th at 863 ("We have no reason to believe, therefore, that when the Legislature used the term 'theft' in the 1992 amendment [to § 496], it intended any meaning broader than the meaning the term has in the general theft statute (Pen. Code, § 484), i.e., theft committed by means of larceny, embezzlement, or false pretenses.") (emphasis added).  Otte, though, argues that a few cases have "rejected Bell's declaration that anything that could be the subject of a theft can also be property under Penal Code section 496."  Otte Brief at 29 (citing Lacagnina v Comprehend Systems, Inc.,

---

[24] Section 484 reads in part: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtain credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."  Cal. Penal C. § 484(a).

1   25 Cal. App. 5th 955 (2018); Grouse River Outfitters Ltd. v. NetSuite, Inc., 2016 U.S. Dist.

2   LEXIS 141478 (N.D. Cal. 2016); Agape Family Worship Ctr., Inc. v. Gridiron, 2018 U.S. Dist.

3   LEXIS 91338 (C.D. Cal. 2018)).

4          The Court does not find these cases terribly helpful.  In Lacagnina, the California Court of

5   Appeal distinguished Bell, holding that section 496 involves "Receiving stolen property," and that

6   "labor is not 'property' as that term is used in the Penal Code."  25 Cal. App. 5th at 968–69.  But

7   the opinion went on to say that the Penal Code defines property as including "money, goods,

8   chattels, things in action, and evidences of debt," and so it does not actually undermine the

9   bankruptcy court's holding here.  See id. at 969 (citing People v. Gonzales, 2 Cal. 5th 858, 871

10  (2017)).  In Grouse River Outfitters, the court, focused on a different issue, stated that "the facts

11  alleged are fraud in the taking of money and cannot amount to receipt of stolen property."  2016

12  U.S. Dist. LEXIS 141478, at *40.  And Agape Family Worship Center says nothing about whether

13  money can be property under the statute.  See 2018 U.S. Dist. LEXIS 91338, at *11–15 (agreeing

14  with Grouse River Outfitters re demand requirement and dual liability, but not speaking to money

15  issue).  On the other hand, Allure Labs—which distinguished both Grouse River and Agape

16  Family Worship Center on the issue of the demand requirement—applied section 496 to a case

17  involving stolen money without any hesitation.  See 606 B.R. at 59 ("Regarding the first element

18  of receipt of stolen property, which requires that the property be stolen, Appellees stipulated that

19  the $137,059.10 deposited into [defendants'] joint bank account was embezzled from Allure.").

20         The recent case of Siry Investment, LP v. Farkhondehpour, 45 Cal. App. 5th 1098 (2020)[25]

21  muddies the water somewhat.  In Siry, despite having in place a limited partnership to renovate

22  and lease a building, the defendants improperly diverted rental income away from the limited

23  partnership and thus underpaid Siry, one of the partners, its cash distributions.  45 Cal. App. 5th at

24  1110.  They also "ensured that Siry remained unaware of the underpayments by misrepresenting to

25  Siry the building's rental income and the partnership's expenses, effectively lying to Siry about

26

27  ───────────────
    [25] Otte raised Siry for the first time in his reply brief, even though the March 3, 2020 opinion came
28  out six months before Otte's September 24, 2020 opening brief.  See Otte Reply at 15.  No other
    briefing discusses it.

1   what its cash distributions should have been." Id.  The trial court awarded Siry treble damages

2   and attorneys' fees under section 496(c).  Id. at 1112–13.

3         The California Court of Appeal was tasked with determining whether section 496(c)

4   "authorize[d] Siry to obtain treble damages where the underlying conduct did not involve

5   trafficking in stolen property, but rather the improper diversion of a limited partnership's cash

6   distributions through fraud, misrepresentation, and breach of fiduciary duty."  Id. at 1133.  Siry

7   asked the court to follow Switzer, Bell, Allure Labs, and other cases concluding "that treble

8   damages are available whenever the defendant's underlying conduct involves any type of

9   fraudulent conduct or misrepresentation."  Id. at 1133–34.  Defendants asked the court to follow

10  Lacagnini, Grouse River Outfitters, and Agape Family Worship Center, which it characterized as

11  rejecting "Bell's declaration that [a]nything that could be the subject of a theft can also be property

12  under Penal Code section 496."  Id. at 1134 (internal quotation marks omitted).

13        The court focused on whether the Legislature could really have intended for "section 496

14  to authorize an award of treble damages whenever plaintiff proves . . . any type of theft—whether

15  it be fraud, misrepresentation, conversion, or breach of fiduciary duty—by which the defendant

16  obtains money or property."  Id. at 1135.  It noted that making treble damages available "would

17  transmogrify the law of remedies for those torts."  Id.  It observed that allowing "496 to apply in

18  theft-related tort cases would effectively repeal the punitive damages statutes."  Id. at 1136.  It

19  reasoned that "imposing treble damages in cases alleging fraud, misrepresentation, breach of

20  fiduciary duty and other torts outside the context of stolen property" would not satisfy the

21  Legislature's goal of drying up the market for stolen goods.  Id. at 1136–37.  And it concluded that

22  "Penal Code section 496's language sweeps more broadly than its intent" and that "it does not

23  provide the remedy of treble damages for torts not involving stolen property."  Id. at 1137.

24        Siry thus provides the strongest support for Otte's argument that stolen money is not stolen

25  property, and that therefore section 496 should not apply.  Nevertheless, the court in Siry was

26  concerned with awarding treble damages and attorneys' fees anytime there was underlying

27  fraudulent conduct, thereby upending California's tort law.  See, e.g., 45 Cal. App. 5th at 1135

28  ("[u]ntil now, the damages remedy for these torts has been limited to the amount of damages

1  actually caused by the fraud, misrepresentation, conversion or breach of fiduciary duty"), 1135–36

2  ("[t]reble damages under [496], if held applicable to these torts, would all but eclipse these

3  traditional damages remedies"), 1136 ("our Legislature has not shouted, stated, or even whispered

4  anything about [496] effecting such a 'significant change' to the universe of tort remedies."). The

5  underlying conduct in our case is the <u>crime</u> of embezzlement, not a tort. <u>See</u> Order re: Motion to

6  Set Fees, Costs and Interest at 5 ("At trial, the parties stipulated, and I independently found, that

7  Martinez's actions constituted embezzlement."). Applying section 496 here would not upend

8  California tort law. <u>Siry</u> is not on all fours with this case.[26]

9       This Court continues to believe that section 496 applies to a case involving stolen money

10  (i.e., money taken through the crime of embezzlement). Accordingly, the Court rejects Otte's

11  argument, and concludes that the bankruptcy court properly awarded attorneys' fees here.

12  **IV.    CONCLUSION**

13       For the foregoing reasons, the Court AFFIRMS the holdings of the bankruptcy court on all

14  of the issues presented, save and except for its award of prejudgment interest, which the Court

15  REVERSES.

16       **IT IS SO ORDERED.**

17       Dated: January  7 , 2021

18                                         CHARLES R. BREYER
                                           United States District Judge

19

20

21

22

23

24

25

26

---

[26] This Court is aware that, on July 8, 2020, the California Supreme Court granted the petition for
27  review in <u>Siry</u>. <u>See Siry Investment v. Farkhondehpour</u>, 468 P.3d 701 (July 8, 2020). In the event
that the California Supreme Court decides <u>Siry</u> in a way that is inconsistent with this order's view
28  of section 496, this Court will entertain a motion for reconsideration.